STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2022 CA 1001

PONTCHARTRAIN NATURAL GAS SYSTEM, K/D/S PROMIX, L.L.C. and
ACADIAN GAS PIPELINE SYSTEM

VS.

TEXAS BRINE COMPANY, LLC

Judgment rendered: __**MAR 0 1 2023**__

* * * * *

On Appeal from the
Twenty-Third Judicial District Court
In and for the Parish of Assumption
State of Louisiana
Docket No. 34265, Division B

The Honorable Thomas J. Kliebert, Jr., Judge Presiding, Ad Hoc

* * * * *

| | |
|---|---|
| Leopold Z. Sher | Attorneys for Appellant/ |
| James M. Garner | Third-Party Plaintiff |
| Peter L. Hilbert, Jr. | Texas Brine Company, LLC |
| Christopher T. Chocheles | |
| New Orleans, Louisiana | |
| and | |
| Travis J. Turner | |
| Gonzales, Louisiana | |
| | |
| Kent A. Lambert | Attorneys for Appellee/ |
| Leopoldo J. Yanez | Third-Party Defendant |
| Lauren Brink Adams | Legacy Vulcan, LLC |
| Colleen C. Jarrott | |
| Matthew C. Juneau | |
| Roy C. Cheatwood | |
| Adam B. Zuckerman | |
| New Orleans, Louisiana | |

* * * * *

**BEFORE: WELCH, HOLDRIDGE, and WOLFE, JJ.**

**HOLDRIDGE, J.**

This dispute is one of many arising out of the August 2012 sinkhole that appeared near Bayou Corne in Assumption Parish. In this appeal, Texas Brine Company, LLC challenges the May 5, 2022 judgment that granted Legacy Vulcan, LLC's "Motion for Partial Summary Judgment Dismissing Texas Brine's Claim Under the Assignment of Salt Lease" and dismissed Texas Brine's claim against Legacy Vulcan under the assignment of the salt lease. After review, we dismiss the appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

This matter has been before this court many times, and the following relevant facts and procedural history are taken from one of this court's recent opinions. See **Pontchartrain Natural Gas System v. Texas Brine Company, LLC**, 2022-0738 (La. App. 1 Cir. 12/29/22), ___ So.3d ___, ___-___, 2022 WL 17983139 at *1-3. In brief, the relevant history in this appeal dates back to July 18, 1975, when Texas Brine, by way of a "Salt Lease," secured the right to produce salt from a 40-acre tract of land in Assumption Parish, commonly referred to by the parties as the "North 40." Texas Brine then entered into a series of interdependent contracts with Legacy Vulcan, including an "Assignment of Salt Lease" (Assignment of Salt Lease), under which Texas Brine purportedly assigned all of its rights, title, and interest as lessee in and under the Salt Lease to Legacy Vulcan, and Legacy Vulcan assumed all obligations of Texas Brine as lessee in and under the Salt Lease, which Legacy Vulcan obligated itself or its operators to perform; a "Construction Contract and Facilities Lease" (Facilities Lease), under which Texas Brine was to site, drill, and construct certain wells, related facilities, and a pipeline on the North 40 and lease certain property to Legacy Vulcan; and, an "Operating and Supply Agreement" (Operating Agreement), under which Texas Brine would operate facilities it constructed on the North 40 in order to produce and deliver a certain quantity and

2

quality of brine to be used by Legacy Vulcan in its chloralkali business at its facility in Geismar, Louisiana. The Operating Agreement further provided that Texas Brine maintain, repair, and at all times, keep the facilities leased by it to Legacy Vulcan in good and safe operating condition. In turn, Legacy Vulcan was obligated to pay Texas Brine for its services. Each of the above agreements provided certain other specific rights to and obligations owed by the parties.

Later Texas Brine and Legacy Vulcan entered into the "First Amendment to the Salt Lease," "Amendment to Construction Contract and Facilities Lease" (Amended Facilities Lease), and "Amended and Restated Operating and Supply Agreement" (Amended Operating Agreement), each contract dependent upon the other contracts, for the purpose of continuing the brine mining and exploration on the North 40. The general principles underlying the Amended Operating Agreement remained the same—Texas Brine would operate on the North 40 to produce and deliver certain quantities and qualities of brine to Legacy Vulcan. Texas Brine further obligated itself to maintain, repair, and at all times, keep these facilities in good and safe operating condition, and comply with, perform, and fulfill all obligations of Legacy Vulcan to Texas Brine under the Amended Facilities Lease between the parties, with respect to the maintenance, operation, and preservation of the leased premises. Legacy Vulcan, in turn, obligated itself to pay for Texas Brine's services. Changes or additions made to the Amended Operating Agreement included giving Legacy Vulcan the right to double the amount of salt Texas Brine produced and delivered to Legacy Vulcan, as well as Texas Brine separately and again obligating itself to ensure that Legacy Vulcan was compliant with its obligations under the Amended Facilities Lease.

Following the sinkhole's emergence, multiple plaintiffs filed numerous lawsuits against Texas Brine, all of whom suffered damages due to the sinkhole. Texas Brine, in turn, asserted numerous third party demands against Legacy Vulcan,

3

including breach of contract claims. Specifically, regarding the Assignment of Salt Lease, Texas Brine asserted that in Section 4.01, Legacy Vulcan assumed all of the obligations of Texas Brine, the lessee under the Salt Lease, and that one of those obligations was to operate the salt mine in a prudent manner and to comply with all applicable government regulations (Section 14 of the Salt Lease). Texas Brine alleged that pursuant to Section 6.01(d) of the Assignment of Salt Lease, Legacy Vulcan was in default if it failed to comply with its obligations under the Assignment of Salt Lease.

The Phase 1 liability trial was held in September and October 2017, for the purpose of determining what caused the sinkhole to form and which parties were at fault under any theory of law for causing the formation of the sinkhole. See **Pontchartrain Natural Gas System v. Texas Brine Company, LLC**, 2018-1249 (La. App. 1 Cir. 12/30/20), 317 So.3d 715, 725, writs denied, 2021-00382, 2021-00386 (La. 6/8/21), 317 So.3d 323. The district court found both Texas Brine and Legacy Vulcan at fault. **Pontchartrain Natural Gas System**, 317 So.3d at 739. This court affirmed that part of the judgment on appeal, finding that Legacy Vulcan failed to act as a prudent mineral lessee, and Texas Brine failed to prudently operate on the North 40. **Pontchartrain Natural Gas System**, 317 So.3d at 756-58.

Thereafter, the parties began the next phase of this litigation, which encompassed all remaining incidental demands and damage/quantum issues, but not including insurance issues or attorney's fees. Legacy Vulcan filed numerous motions for partial summary judgment asserting various arguments regarding Texas Brine's contractual claims against Legacy Vulcan. One such motion was Legacy Vulcan's motion for partial summary judgment seeking to dismiss Texas Brine's claim under the Assignment of Salt Lease. Texas Brine had alleged that Legacy Vulcan was in default of the Assignment of Salt Lease under Section 6.01 based on its alleged failure "to 'operate' on the [land] in a 'prudent manner' and to conduct

4

its operations in compliance with the regulations of all governmental agencies." In its motion for partial summary judgment, Legacy Vulcan argued that Texas Brine breached its duty to prudently operate the Oxy Geismar No. 3 Well and that Texas Brine's breach barred it from recovering under the Assignment of Salt Lease's default provisions under La. C.C. art. 1993.[1] Legacy Vulcan also contended that Texas Brine failed to give written notice of its purported default as it was contractually required to do. Legacy Vulcan argued that Texas Brine assumed the obligations of operating on the Salt Lease premises and complying with all governmental standards, such that Texas Brine could not assert a cause of action for breach of a duty that it had assumed.

Texas Brine opposed the motion, asserting numerous arguments, including: Texas Brine satisfied the notice requirement of the Assignment of Salt Lease by filing suit or the Assignment of Salt Lease did not mandate written notice prior to suit being filed; Legacy Vulcan did not assign all of the lessee's obligations under the Salt Lease to Texas Brine; the Amended Operating Agreement charged Texas Brine with Legacy Vulcan's obligations only with respect to the Facilities Lease, not the Salt Lease; and there were no reciprocal obligations under the Assignment of Salt Lease, so Legacy Vulcan could not invoke Texas Brine's purported operational breaches under the Amended Operating Agreement.

The district court held a hearing on this motion, along with several other motions, on April 5, 2022. Following the parties' arguments, the district court took the matter under advisement. On May 5, 2022, the district court issued reasons for judgment and signed a judgment, stating:

> **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that [Legacy] Vulcan's Motion for Partial Summary Judgment Dismissing Texas Brine Company, LLC's Claim Under the Assignment of Salt Lease is **GRANTED.**

---

[1] Louisiana Civil Code article 1993 states, "In case of reciprocal obligations, the obligor of one may not be put in default unless the obligor of the other has performed or is ready to perform his own obligation."

. . .

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that this Judgment is designated as a final judgment in accordance with Louisiana Civil Code Article 1915, as the Court finds that there is no just reason for delay.

## ASSIGNMENTS OF ERROR

Texas Brine appeals from the adverse judgment, contending the district court erred in ignoring this court's findings in the liability ruling in **Pontchartrain Natural Gas System**, 317 So.3d at 761, that Legacy Vulcan breached its duty to act as a prudent lessee of the Salt Lease, as those breaches were defaults of Legacy Vulcan's obligations under the Assignment of Salt Lease. Texas Brine also contends that the district court erred in "confusing Texas Brine's operational obligations under the Amended Operating Agreement with [Legacy] Vulcan's duties as the lessee under the Salt Lease." Lastly, Texas Brine contends that the district court erred in granting summary judgment because genuine issues of material fact exist as to the scope of the obligations assigned to Legacy Vulcan by Texas Brine in the Assignment of Salt Lease and Texas Brine's "corresponding contractual duties."

## APPEALABILITY OF PARTIAL SUMMARY JUDGMENT

Appellate courts have a duty to examine subject matter jurisdiction *sua sponte*, even when the parties do not raise the issue. **Advanced Leveling & Concrete Solutions v. Lathan Company, Inc.**, 2017-1250 (La. App. 1 Cir. 12/20/18), 268 So.3d 1044, 1046 (*en banc*). This court's appellate jurisdiction extends only to "final judgments." See La. C.C.P. art. 2083(A).

A partial summary judgment rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, may be granted in favor of one or more parties, even though the granting of the summary judgment does not dispose of the entire case as to that party or parties pursuant to La. C.C.P. art. 966(E). A judgment granted pursuant to La. C.C.P. art. 966(E) may be immediately appealed during

6

ongoing litigation only if it has been designated as a final judgment by the district court after an express determination that there is no just reason for delay. See La. C.C.P. art. 1915(A)(3) & (B); **OAT Trustee, LLC as Trustee for Girod Titling Trust v. Elite Investment Group, LLC**, 2021-1402 (La. App. 1 Cir. 7/29/22), 347 So.3d 938, 946. Although the district court designated the partial summary judgment as a final one pursuant to La. C.C.P. art. 1915(B)(1), that designation is not determinative of this court's jurisdiction. Rather, this court's jurisdiction to decide this appeal hinges on whether the certification was appropriate. See **OAT Trustee, LLC**, 347 So.3d at 946. Because the district court herein did not give reasons for the certification, this court must make a *de novo* determination of whether the certification was proper. **R. J. Messinger, Inc. v. Rosenblum**, 2004-1664 (La. 3/2/05), 894 So.2d 1113, 1122.

Historically, our courts have adopted and followed a policy against multiple appeals and piecemeal litigation. **Messinger**, 894 So.2d at 1122. Louisiana Code of Civil Procedure article 1915 attempts to strike a balance between the undesirability of piecemeal appeals and the need for making review available at a time that best serves the needs of the parties. Thus, in considering whether a judgment is properly designated as final pursuant to La. C.C.P. art. 1915(B)(1), a court must take into consideration judicial administrative interests as well as the equities involved. See **Messinger**, 894 So.2d at 1122. Under **Messinger**, the following list of non-exclusive factors are to be considered in determining whether a partial judgment should be certified as final include: (1) the relationship between the adjudicated and the unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; and (4) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims,

7

expense, and the like. However, the overriding inquiry is whether there is no just reason for delay. **Messinger**, 894 So.2d at 1122-23.

Applying these precepts on *de novo* review, we conclude the May 5, 2022 partial summary judgment does not meet the requirements of an appealable final judgment under La. C.C.P. art. 1915(B). Although Texas Brine and Legacy Vulcan entered into several interdependent contracts, the issue on appeal is limited to Texas Brine's claim against Legacy Vulcan for breach of the parties' Assignment of Salt Lease. Therefore, any decision by this court on this limited claim, "without consideration of the remaining interdependent contracts and claims thereupon, would merely result in inefficient, piecemeal, and possibly conflicting resolution of only a minor part of the parties' related contract claims." **Pontchartrain Natural Gas System**, ___ So.3d at ___, 2022 WL 17983139 at *4. See also La. C.C. art. 2053 ("A doubtful provision [in a contract] must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, **and of other contracts of a like nature between the same parties.**" (Emphasis added.))

This court has dismissed prior similar appeals in this litigation for lack of subject matter jurisdiction after finding that the partial summary judgments which were designated as final judgments pursuant to La. C.C.P. art. 1915(B)(1) did not meet the **Messinger** requirements. In **Pontchartrain Natural Gas System**, ___ So.3d at ___, 2022 WL 17983139 at *3-4, this court dismissed Texas Brine's appeal of the dismissal of its contract claims against Legacy Vulcan under the parties' Amended Operating Agreement pursuant to Legacy Vulcan's motion for partial summary judgment. This court noted that it was aware that the parties had chosen this particular method of litigation to dispose of their remaining claims and that the district court was attempting to proceed in as efficiently as possible at this juncture. **Pontchartrain Natural Gas System**, ___ So.3d at ___, 2022 WL 17983139 at *4.

This court then commented that interpreting the parties' interrelated contracts in a disjointed manner, after their interdependence was established, was not efficient or equitable. **Pontchartrain Natural Gas System,** ___ So.3d at ___, 2022 WL 17983139 at *4. In the concurrence in **Pontchartrain Natural Gas System,** ___ So.3d at ___, 2022 WL 17983139 at *4, Judge Holdridge noted that the Louisiana Supreme Court case of **R.J. Messinger** mandates a policy against the piecemeal litigation and multiple appeals that have been taken from partial judgments involving the 2012 Assumption Parish sinkhole litigation over the past ten years. It is important for this court and the district court to operate under the principle of sound judicial administration to promote judicial efficiency and economy, neither of which have been present in the sinkhole litigation. **Pontchartrain Natural Gas System,** ___ So.3d at ___, 2022 WL 17983139 at *4 (Holdridge, J., concurring). Likewise, in **Crosstex Energy Services, LP v. Texas Brine Company,** 2022-0782 (La. App. 1 Cir. 02/17/23), 2023 WL 2055190 at * 1, this court dismissed Texas Brine's appeal of a partial summary judgment rendered in favor of Legacy Vulcan that dismissed Texas Brine's claims under the Amended Operating Agreement.

Accordingly, having found the May 5, 2022 judgment does not meet the requirements of a final appealable judgment under La. C.C.P. art. 1915(B) and **Messinger,** we lack subject matter jurisdiction herein and dismiss the appeal.

## CONCLUSION

For the above reasons, we dismiss this appeal of the May 5, 2022 judgment and remand this matter to the district court for further proceedings consistent with this opinion. All costs of this appeal are assessed equally between Texas Brine Company, LLC and Legacy Vulcan, LLC.

**APPEAL DISMISSED; CASE REMANDED.**